Henry A. Hudson, J.
The defendant in this proceeding appears specially and moves to set aside service of process upon the ground that the court has no jurisdiction over the defendant, it being a foreign corporation not doing business within this State. Service of process was made upon John W. Mantica, an employee of Contractors Sales Company, a domestic corporation, which it is alleged by plaintiff, is an agent of the defendant in this State.
Plaintiff has made a cross motion for an examination before trial of the defendant as to defendant’s activities, business and other matters relating to the defendant’s doing business in the State of New York, the examination to be by interrogatories or by open commission as the plaintiff may elect and for a further order staying defendant’s motion to vacate service until such time as said examination has been had and the filing of the deposition. Plaintiff indicates no section or rule of the Civil Practice Act under which he is proceeding but it is assumed that he is proceeding under section 288 of the Civil Practice Act and rule 122 of the Rules of Civil Practice.
Defendant submits the affidavit of Edward F. McLaughlin, an attorney of the firm representing the defendant, appearing specially on the motion, in which it is stated on information and belief that defendant is a foreign corporation organized under the laws of the State of Missouri, that it is not authorized to do business within the State of New York, has not done business here at any time and that all matters relating to the business of defendant are conducted from its principal office at Kansas City, Missouri. It is also alleged in the affidavit that John Mantica upon whom service of the summons and complaint was made, has not been and is not now an officer, director or managing agent of defendant; that neither does he have authority to perform any function corresponding to *278 those of an officer under any name, nor has he been designated at any time as a person upon whom service of process upon the deféndant could be made within the State of New York. There is also submitted by the defendant, the affidavit of Arthur D. Moore, vice-president and general manager of the Pitman Manufacturing Company, defendant, appearing specially for the sole purpose of contesting the validity of the service of process, in which it is stated that Pitman Manufacturing Company is a Missouri corporation whose principal office is located in Kansas City, Missouri and its manufacturing plant at Grand-view, Missouri. That it has no office or place of business outside Missouri and is not authorized to do business in New York or any other foreign State. That it manufactures aerial platforms known as “Giraffes” and hydraulic cranes called “Pitman Cranes” or “Hydro-Lifts” and-small self-propelled aerial platforms called “ Travel Towers ”. It is alleged that its dealings with Contractors Sales Company, Inc. of Albany are strictly as a manufacturer and dealer on the following basis:
Contractors Sales Company, Inc., deals in many types of heavy equipment used by construction contractors and utility companies. Its sales of Pitman products are a very small percentage, substantially less than 10%, of its total sales. Since 1953, that dealer has purchased from Pitman for resale six Hydra-Lifts and one Pitman Model 80 Crane. Contractor Sales Company, Inc., has no authority to act as agent for Pitman in any manner. It has never effected a contract binding Pitman, nor has it ever attempted to do so. Its sales of Pitman products are for its own account. It mails purchase orders for Pitman products to Pitman at Kansas City, where Pitman accepts or rejects the offer to purchase. Contracts between Pitman and that dealer are by mail or through Pitman’s dealer representative for the northeastern states, who resides outside New York, but who calls on our dealers in New York to advise the dealers about new products and sales matters and to attempt to induce the dealers to purchase Pitman products to be used by the dealers for demonstration and resale. Pitman maintains no office, warehouse, employee nor telephone listing in New York.
Prom time to time Pitman sends to New York an installation specialist to call on a dealer who has requested advice regarding the procedure for installing a Pitman product on a truck. No installation man has ever called on Contractors Sales Company, Inc., since it became our dealer about five years ago.
No employee or agent of Pitman has ever engaged in any activity in New York other than as described above.
There is also attached to such affidavit a copy of a dealer-sales agreement which was executed by the parties on July 5, 1956 which is the customary agreement used in such a relationship from which the following paragraphs are quoted:
1. Purchases And Dealer Activity: The Pitman Co. agrees to sell to the dealer Pitman equipment covered by orders accepted by Pitman Co. • and the dealer agrees to purchase such equipment from the Pitman Co. The dealer agrees to promote actively the sale of Pitman equipment in all reasonable ways *279 in the territory hereinafter defined, to employ adequate and competent help to handle sales and service facilities, to stock sufficient Pitman parts to enable the dealer adequately to service Pitman equipment in dealer’s territory, promptly to distribute advertising material furnished from time to time by the Pitman Co., to furnish as requested sales reports on Pitman equipment sold and delivered in dealer’s territory and to inform Pitman Co. as to the current status of inquiries on Pitman equipment. The dealer agrees not to become interested in the manufacture or sale of any equipment competitive with the Pitman equipment, to furnish reports regarding promotional activities and sales prospects as reasonably requested, and immediately to notify Pitman Co. in writing of any change in the ownership of the dealer’s business. Upon request the dealer agrees to furnish to Pitman Co. copies of dealer’s current financial statements.
5. Warranty: The Pitman Co. sells equipment to the dealer subject only to the following warranty and the dealer agrees, that said equipment shall be resold by dealer subject only to the same warranty and none other. !i * * 7. Acceptance and Delivery Of Orders: Pitman Co. by accepting orders from the dealer, does not agree to deliver such orders at any specific date regardless of whether otherwise so specified on the order, but only to deliver as promptly as conditions reasonably permit and subject to prior orders * * 12. Assignment, Agency, Etc.: This agreement is not assignable by the dealer without the written consent of the Pitman Co. The dealer is not the agent of the Pitman Co. and shall not represent himself as such. This agreement represents the entire agreement between the parties and is not subject to addition or change except in writing signed by an officer of the Pitman Co. at its home office in Kansas City, Missouri, and shall be construed according to the laws of the State of Missouri. (Emphasis supplied.)
Upon the facts before the court as produced by the defendant in the affidavit of its vice-president and general manager and the copy of the agreement itself, I am of the opinion that defendant was not doing business within the State of New York so as to make it amenable to service of process within the purview of the applicable statutes. (Princehouse v. Colorshake Corp., 140 N. Y. S. 2d 250.)
Plaintiff has not submitted any satisfactory evidentiary facts to establish that defendant is doing business here but has moved for leave to examine the defendant before trial claiming that he has no way of meeting the issues raised by defendant’s motion to dismiss without such an examination. No information whatsoever as to the duties of the person served with process or as to his business relations with Pitman are given. In the face of the categorical denial of the vice-president and general manager of this company in his affidavit and the terms of the agreement between Contractors Sales Company and Pitman attached thereto it would appear that Contractors Sales Co., Inc. is in an independent dealer selling merchandise for defendant upon a commission basis (Wolf v. Globe Hoist Co., 285 App. Div. 1167) and that defendant has met the burden *280 of proof as to why it should not be examined. (Holzer v. Dodge Bros., 233 N. Y. 216; Miller v. Surf Properties, 4 N Y 2d 475.)
There is authority to support the reasoning that an examination before trial of a party defendant should not be permitted under circumstances such as are here involved. (Standard Food Prods. Corp. v. Vinas Unidas S. A., 200 Misc. 590.)
The defendant has appeared specially for purposes of the motion only. Issue has not been joined and while motion practice to permit examinations before trial has been liberalized to a great extent, a careful reading of section 288 of the' Civil Practice Act discloses that the elements necessary to take the deposition of defendant as an adverse party are not present in plaintiff’s application. From all that appears here in the moving papers no action may be said to be pending under which a deposition might be authorized. (Civ. Prac. Act, § 288.)
An examination before trial of a party is not available to obtain testimony in connection with preliminary motions separate and apart from a trial. (Tripp, A Guide to Motion Practice [revd. ed.], p. 205.)
The motion of plaintiff is denied and the cross motion of defendant to vacate the service of process upon Pitman Manufacturing Company is granted, with $10 costs.